Barbara A. Solomon (bsolomon@fzlz.com)
Jessica Vosgerchian (jvosgerchian@fzlz.com)
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
151 W. 42nd Street, Floor 17
New York, NY  10036
(212) 813-5900
*Attorneys for Plaintiff*
*Chanel, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHANEL, INC.,<br><br>                              Plaintiff,<br><br>      v.<br><br>SHIVER AND DUKE, LLC, EDITH ANNE HUNT and JOHN DOES 1-10,<br><br>                              Defendants. | **COMPLAINT** |

Plaintiff, Chanel, Inc. ("Plaintiff" or "Chanel"), by its undersigned attorneys Fross Zelnick Lehrman & Zissu, P.C. for its Complaint against defendant Shiver and Duke, LLC ("S & D"), Edith Anne Hunt and John Does 1-10 (collectively, "Defendants") alleges as follows:

<u>SUBSTANCE OF THE ACTION</u>

1.      This action arises out of Defendants' unauthorized misappropriation of Plaintiff's world famous and federally registered CC Monogram trademark and CHANEL trademark (the "CHANEL Marks") in order to create and market costume jewelry that draws and relies on the selling power and fame of the CHANEL Marks.  More specifically, Defendants have taken buttons bearing the CC Monogram that are not intended for use other than on Chanel's authorized clothing and have put them on chains, earrings, and bracelets and are selling them as "Designer" jewelry.  The prominent mark and feature of the costume jewelry is Chanel's CC Monogram.  The commercial interest in the Defendants' jewelry is based on the use of Chanel's

iconic trademark on the jewelry and the use of the CHANEL name to promote and market the jewelry.

2.     Rather than create a unique mark or product line, Defendants have knowingly and willfully taken Chanel's marks – which Chanel uses for and on its own costume jewelry – and has appropriated Chanel's immediately recognized, highly sought after, and federally registered trademarks for their own business and their own commercial benefit.  Defendants are fully aware that they are not authorized to repurpose Chanel's products to create new commercial items, and that they are not authorized to sell jewelry prominently displaying or sold under the CHANEL Marks.  Nevertheless, Defendants persist in their conduct in order to trade on the recognition and commercial value of the CHANEL Marks.

3.     Based on Defendants' conduct, Chanel asserts claims for trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); trademark infringement and unfair competition under the common law of New York; and trademark dilution under Section 360-*l* of the New York General Business Law.  Plaintiff seeks injunctive relief, an accounting of Defendants' profits flowing from their use of the CHANEL Marks, damages, attorneys' fees, and such other relief as the Court deems just and proper.

<u>PARTIES</u>

4.     Plaintiff Chanel, Inc. is a corporation organized and existing under the laws of the State of New York with a principal place of business at 9 West 57th Street, New York, New York 10019.

5.      Upon information and belief, defendant S & D is a Georgia limited liability company with a place of business at 4666 East Conway Drive, Atlanta, Georgia 30327 owned by Edith Anne Hunt.

6.      Upon information and belief, defendant Edith Anne Hunt is an individual who owns defendant S & D with a place of business at 4666 East Conway Drive, Atlanta, Georgia 30327 and who directs and controls S&D's conduct including the conduct alleged herein.

7.      Upon information and belief, John Does 1 through 10 are individuals or entities residing in or otherwise conducting and transacting business in this district, own or control the actions of S & D as described below, are the alter ego of S & D, or otherwise are engaged in the advertisement, promotion, marketing, display, distribution, offering for sale and/or sale of the infringing S & D jewelry.  Upon learning of the specific identity of said defendants, Chanel shall move, as necessary, to substitute the named parties or to otherwise amend this Complaint.

<u>JURISDICTION AND VENUE</u>

8.      This Court has jurisdiction over the subject matter of this action pursuant to Section 39 of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1121, and under Sections 1331, 1338(a) and 1338(b) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a) and 1338(b).  The Court has supplemental jurisdiction over the state law claims under Section 1367(a) of the Judicial Code, 28 U.S.C. §§ 1367(a).

9.      This Court has personal jurisdiction over Defendants under Sections 301 and/or 302 of the New York Civil Practice Laws and Rules because Defendants conduct, transact and solicit business in this district, including by selling the products at issue to consumers in this district and shipping such products to this district, because Defendants operate a highly interactive website that offers Defendants' infringing products for sale to consumers in this

district, and because the events giving rise to this Complaint occurred in this state and/or had effects in this state, and Chanel is being harmed in this jurisdiction.

10.     Venue is proper in this district pursuant to Sections 1391(b) and (c) of the Judicial Code, 28 U.S.C. § 1391(b) and (c), because Defendants are subject to personal jurisdiction in this district due to their transacting of business herein, including shipping and selling infringing jewelry in and to this district, because a substantial portion of the events at issue have arisen and will arise in this judicial district and Plaintiff is suffering harm in this judicial district.

FACTS COMMON TO ALL
CLAIMS FOR RELIEF

A.     Chanel's Business and Use of the CHANEL Marks

11.     Chanel is a premier manufacturer and seller of a wide variety of luxury consumer products, and is a recognized leader in the field of fashion and beauty.   Chanel's products are immediately recognized by the use of the CHANEL Marks.

12.     Among the trademarks long used by Chanel to identify its goods and services are both the CHANEL trademark and a design mark consisting of two interlocking back-to-back letter Cs as follows:



(the "CC Monogram").

13.     Chanel has used the CHANEL Marks for more than a century, including use for decades in United States commerce.  Today, the CHANEL Marks are reproduced on millions of dollars worth of consumer goods spanning the full range of Chanel's product line, including clothing, shoes, bags, jewelry, accessories, fashion and beauty products and eyewear.  Products

bearing or sold under the CHANEL Marks are available throughout the United States in hundreds of retail outlets, as well as through authorized retailers on the Internet. Chanel's yearly sales of products bearing or sold under the CHANEL Marks total in the hundreds of millions of dollars. All products bearing the CHANEL Marks are renowned for their high quality and are identified and recognized as being exclusively from Chanel by virtue of their use of the CHANEL Marks.

14.     In addition to appearing on Chanel's products, the CHANEL Marks are used on collateral material, such as buttons on clothing, as well as on packaging, hangers, labels and hangtags. The marks also are featured prominently in advertisements that regularly appear in nationally distributed magazines.

15.     The recognition of the CHANEL Marks among the public at large is enhanced not only by Chanel's own advertising efforts but by fashion editorial and press coverage of Chanel that frequently highlights products bearing the CHANEL Marks. Such coverage reaches hundreds of millions of consumers.

16.     The CHANEL Marks have become extraordinarily well known across all social and demographic groups, being instantly recognized by consumers of streetwear and haute couture fashions alike. As a result, products bearing the CHANEL Marks are in demand by consumers of all ages and from all demographics.

17.     Among the products that Chanel has long provided under the CHANEL Marks is costume jewelry. The CC Monogram has been the featured element of much of Chanel's costume jewelry for decades. Attached hereto as **Exhibit A** are true and correct copies of printouts of webpages from Chanel's *chanel.com* website showing representative samples of Chanel jewelry featuring the CHANEL Marks.

18.     Chanel advertises costume jewelry bearing the CHANEL Marks across a variety of media, including the Internet, magazines and newspapers.

19.     Chanel's revenue from sales of costume jewelry sold under and/or bearing the CHANEL Marks from 2015 to 2019 exceeds $300 million.

20.     Moreover, leading the trend of high-profile fashion collaborations, Chanel has collaborated with other brands and designers to develop and release capsule collections of apparel and accessories bearing the CHANEL Marks alongside the trademarks of Chanel's collaborators, which have included the footwear brand Adidas, the famed Parisian boutique Colette and music mogul Pharrell Williams.  Attached hereto as **Exhibit B** are true and correct copies of articles publicizing recent collaborations by Chanel.

21.     Chanel owns numerous federal trademark registrations for the CHANEL Marks in connection with a variety of goods and services, including the following registrations for jewelry:

| MARK | REG. NO. | REG. DATE | RELEVANT GOODS |
| --- | --- | --- | --- |
| CHANEL | 612,169 | Sept. 13, 1955 | Necklaces (Class 14) |
| CHANEL | 902,190 | Nov. 10, 1970 | Bracelets, pins and earrings (Class 14) |
| | 1,501,898 | Aug. 30, 1988 | *Inter alia*, costume jewelry (Class 14) and brooches, buttons for clothing (Class 26) |
| CHANEL | 3,133,139 | Aug. 22, 2006 | Jewelry and watches (Class 14) |

All of these registrations are valid, subsisting, in full force and effect, and incontestable, thus serving as conclusive evidence of the validity of the marks and as conclusive evidence of Plaintiff's exclusive right to use of the marks in connection with the identified products under

Sections 15 and 33(b) of the Lanham Act, 15 U.S.C. §§ 1065, 1115(b).  True and correct printouts from the United States Patent and Trademark Office database reflecting these registrations are annexed as **Exhibit C**.

22.     Because of Chanel's exclusive and extensive use of the CHANEL Marks, the marks have acquired enormous value and have become famous among the consuming public and trade as identifying and distinguishing Chanel exclusively and uniquely as the source of products available under or bearing the marks.

B.     Defendants' Unlawful Conduct

23.     Upon information and belief, Defendants manufacture, promote and sell costume jewelry products featuring the iconic CC Monogram as their main source of identification.

24.     This costume jewelry is made from Chanel buttons that are not obtained from Chanel or provided to Defendants by or with the consent or knowledge of Chanel and are not verified as genuine by Chanel.  The buttons used by Defendants are not intended or authorized for use by Defendants and are not intended or authorized for use as the featured element of jewelry created by Defendants who have no relationship with Chanel.

25.     The button jewelry made by S & D that features the CC Monogram includes necklaces, earrings and bracelets.  In promoting and marketing their costume jewelry on the *shiverandduke.com* retail website, Defendants refer to the jewelry as "Designer" and in some instances have used the CHANEL mark to identify their CC Monogram button jewelry. Annexed hereto as **Exhibit D** is a true and correct printout of a retail listing from the *shiverandduke.com* website depicting one of Defendants' CC Monogram bracelets next to the CHANEL mark.  As evidenced by **Exhibit D**, there is no dispute that Defendants are aware of the exclusive association between the CC Monogram and Chanel, that the CC Monogram is

associated exclusively with Chanel, that goods bearing the CC Monogram are highly desirable and sought after, and that Defendants' use of the CC Monogram is intended to trade on the goodwill that Chanel has created in its mark through decades of use and millions of dollars in investments.

26.     Defendants' button jewelry does not alter the CC Monogram and the jewelry nowhere states that it was created by Defendants without the authorization of Chanel.  Rather, the appearance of the CC Monogram on Defendants' jewelry is no different from the display of the CC Monogram on authorized Chanel costume jewelry, and to a consumer there is no distinguishable difference between the appearance of Defendants' unauthorized product and Chanel's genuine product, as shown by the representative examples below.

| Examples of Chanel's Genuine Costume Jewelry | Examples of Defendants' Button Costume Jewelry |
|---|---|
| | |
| | |

 

27.     The CC Monogram button jewelry created by Defendants is sold throughout the United States through a variety of channels of trade, including Defendants' retail website and numerous third-party online retailers, and has been shipped to and sold to consumers in this district.

28.     Defendants market their button jewelry to the same consumers of costume jewelry as Chanel.  Moreover, Defendants' advertising efforts, such as social media posts, focus greatly on button jewelry bearing the CC Monogram, showing that Defendants' are targeting consumers who are unquestionably familiar with and who are seeking to purchase goods bearing Chanel's iconic trademark.

29.     On information and belief, as a result of Defendants' prominent use of the CHANEL Marks, retailers who purchased S & D's costume jewelry have advertised and promoted the products as CHANEL costume jewelry.  For example, attached hereto as **Exhibit E** is a true and correct printout of a webpage on the third-party retail website *sassanova.com* that advertises one of S & D's bracelets bearing the CC Monogram as "DESIGNER CHANEL STONE BRACELET."

30.     On September 2, 2020, Chanel sent S & D a letter explaining that its use of the CHANEL Marks, including its sale of unauthorized jewelry bearing the CC Monogram, violates

Chanel's rights and demanding that such misconduct immediately cease.  Counsel for S & D sent a response letter on September 17, 2020, stating that S & D refused to cease its unauthorized use of Chanel's marks.  Additional follow up communications did not result in any cessation of the use of the CHANEL Marks by Defendants.

31.     The communications sent on behalf of Defendants did not dispute that Defendants knew of the fame of the iconic CC Monogram, that Defendants' knew that the CC Monogram is exclusively associated with Chanel, that Defendants' were not authorized to use the mark for their own products, or that Defendants' use of the CC Monogram was to capitalize on Chanel's valuable brand appeal and commercially benefit from the fame of and consumer interest in Chanel and its branded goods.

32.     Rather than cease the use of the CC Monogram, and the commercial benefit they reap from the use of Chanel's iconic trademark, Defendants have made minor changes to their products and packaging that do nothing to prevent consumers from mistakenly believing that Defendants' jewelry originates from or is authorized by Chanel.

33.     Defendants have altered some of the text on the jewelry's packaging in response to Chanel's objections that Defendants' sale of jewelry featuring the CC Monogram is likely to mislead consumers into believing that Defendants' products originate from or are authorized or approved by Chanel.  Shown below is an example of Defendants' original packaging and examples of packaging Defendants have adopted.

| Example of Original S & D Packaging | Examples of Modified S & D Packaging |
|---|---|
|  | |

34.     However, Defendants' packaging still does not state that the jewelry is not authorized by or associated with Chanel, and the jewelry in the post-sale context conveys only that it comes from Chanel when it does not.

35.     As shown below, Defendants have also added SD SHIVER + DUKE markings on the backs of the CC Monogram buttons, but these added markings are not perceivable on Defendants' jewelry as displayed in the pre-sale context or as worn in the post-sale context.  As

such, Defendants' markings on the backs of their jewelry fail to inform the public that
Defendants' CC Monogram jewelry originates from Defendants, and not Chanel.

 

36.     In response to Chanel's objections, Defendants have added a small tag displaying
the marking "SD" to their button jewelry.  Such use is not consistent across the product line.

37.     When the tag is used, it does not negate the primary visual focus of Defendant's
jewelry, namely Chanel's CC Monogram.  The tag itself is generally obscured by the CC
Monogram button and the markings on the tag are not readily visible, as shown below in
photographs of one of Defendants' necklaces bearing the tag.

 

38.     Further, the tag does nothing to inform the public that the product was repackaged and repurposed by Defendants without the authorization of Chanel.  As with the Defendants' other imperceptible markings on the jewelry, this hidden tag does nothing to alter public perception of Defendants' jewelry worn in the post-sale context.  That the tag is but a half-hearted effort to address Chanel's concerns and that Defendant' intend to continue to trade on Chanel's trademarks is also shown by the lack of use of the tag on various products, including earrings as shown below in promotional images displayed on Defendants' website.

 

 

39.     Regardless whether Defendants use disclaimers, tags or markings to designate S & D as the manufacturer of the costume jewelry bearing Chanel's immediately recognizable CC Monogram, in the post-sale context, the mark most prominently displayed on Defendants' jewelry belongs to and identifies Chanel as the source of Defendants' products. Further, Defendants' use of additional SD markings does not change the fact that the main source identifying feature of the costume jewelry is the CC Monogram, that the jewelry is similar to Chanel's actual products bearing the CC Monogram, and that the selling power of Defendants' products is based on the fame of the CC Monogram.  The new addition on some products of a small tag bearing the SD initials does not cure Defendants' conduct as the tag is unlikely to be seen in the post-sale context, and even if seen, may merely suggest that, as with Chanel's prior collaborations with Adidas, Colette and Pharrell Williams, the product is a collaboration that bears both party's marks.

40.     The use of the CHANEL Marks on and in connection with costume jewelry sold by Defendants falsely suggests that Defendants' jewelry comes from or is otherwise associated with Chanel or is created with the approval of or in collaboration with Chanel.  This is especially so given that Chanel itself sells costume jewelry bearing and/or sold under the CHANEL Marks.

41.     Upon information and belief, Defendants design and manufacture button jewelry bearing the CC Monogram, and sell such costume jewelry under the CHANEL Marks, in order to derive the benefit of the enormous goodwill in the iconic status of the CHANEL Marks developed by Chanel over a century of use.

42.     Despite numerous overtures from Chanel attempting to resolve this matter amicably, Defendants not only have persisted in the unlawful conduct described herein but also

have indicated that they are committed to continuing to sell their unauthorized CHANEL products.

43.     Defendants are using the CHANEL Marks for the type of goods, jewelry, for which Chanel has registrations and on which Chanel itself uses its CHANEL Marks.

44.     Defendants are not associated or affiliated with Chanel and have never been authorized or otherwise licensed to use the CHANEL Marks or any other confusingly similar mark in connection with the sale or offering for sale of any products or services.  In fact, Defendants have been asked to cease their use of the CHANEL Marks.

45.     Upon information and belief, Defendants' use of the CHANEL Marks is with full and active knowledge of Chanel's exclusive rights to the CHANEL Marks, with knowledge of the iconic status of those marks, and with knowledge that the marks are associated exclusively with products of Chanel.

46.     As a matter of law, Defendants were on constructive notice of Chanel's rights in the CHANEL Marks based on Chanel's registrations that issued long prior to Defendants' use of the marks for their own jewelry.

47.     Defendants' unauthorized use of the CHANEL Marks for jewelry is with a deliberate intent to ride on the fame and goodwill of Chanel's trademarks, the deliberate intent to profit from the CHANEL Marks, and the deliberate intent to create a false impression as to the source or sponsorship of Defendants' goods or to otherwise compete unfairly with Chanel.  The goodwill that Chanel has built up in its brand and in the CHANEL Marks through years of substantial investment and effort is put at risk by virtue of Defendants' wholesale appropriation of the CHANEL Marks to sell and advertise their own competing products.

48.     Defendants' acts have and are likely to continue to irreparably harm Chanel's goodwill and reputation.  Defendants' use of the CHANEL Marks unfairly and unlawfully wrests from Chanel control over its trademarks and reputation.  Chanel has no control over the quality of Defendants' products sold under or bearing the CHANEL Marks.  As a result, Chanel's extremely valuable reputation is put in jeopardy and may be permanently damaged.

49.     Defendants' conduct has caused and, unless enjoined by this Court, will continue to cause irreparable injury to Chanel.  Chanel has no adequate remedy at law.

FIRST CLAIM FOR RELIEF
TRADEMARK INFRINGEMENT (15 U.S.C. § 1114(1))

50.     Chanel repeats and realleges each of the allegations set forth in paragraphs 1 through 49 above as if fully set forth herein.

51.     Defendants' unauthorized use of the CHANEL Marks for goods that are covered by Chanel's incontestable trademark registrations and for goods that are identical in type (i.e., jewelry products) to those provided by Chanel under the CHANEL Marks is likely to cause confusion or to cause mistake or to deceive Defendants' customers or potential consumers and the public as to the source or sponsorship of Defendants' goods.  Consumers are likely to be misled into believing that Defendants' products are manufactured by, licensed by, sponsored by, approved by or otherwise associated with Chanel.

52.     Upon information and belief, Defendants were on both actual and constructive notice of Chanel's exclusive rights in the registered CHANEL Marks prior to their own use of the CHANEL Marks.  Defendants' use of CHANEL Marks is willful, in bad faith, and with full knowledge of the goodwill and reputation associated with the CHANEL Marks, and with full knowledge that Defendants have no right, license or authority to use the CHANEL Marks or any other mark confusingly similar thereto.

53.     Defendants' acts are intended to reap the benefit of the goodwill that Chanel has created in its CHANEL Marks and constitutes infringement of Plaintiff's federally registered trademarks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

54.     Defendants' conduct has caused and is causing immediate and irreparable injury to Chanel and, unless enjoined by this Court, will continue to both damage Chanel and deceive the public.  Chanel has no adequate remedy at law.

SECOND CLAIM FOR RELIEF<br>FEDERAL UNFAIR COMPETITION (15 U.S.C. § 1125(a))

55.     Chanel repeats and realleges paragraphs 1 through 54 above as if fully set forth herein.

56.     Defendants' use of the CHANEL Marks constitutes false designation of origin and false representation with respect to the origin of Defendants' goods.  Defendants' use of the CHANEL Marks is likely to cause confusion, mistake, or deception as to the source of Defendants' goods and is likely to create the false impression that Defendants are affiliated with Chanel or that their goods are authorized, sponsored, endorsed, licensed by, or affiliated with Chanel.  Defendants' actions constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

57.     Defendants' use of the CHANEL Marks in connection with their own jewelry destroys the value, exclusivity and reputation of the CHANEL Marks.

58.     Defendants' conduct has caused and is causing immediate and irreparable injury to Chanel and will continue both to damage Chanel and to deceive the public unless enjoined by this Court.  Chanel has no adequate remedy at law.

THIRD CLAIM FOR RELIEF
FEDERAL TRADEMARK DILUTION (15 U.S.C. § 1125(c))

59.     Chanel repeats and realleges paragraphs 1 through 58 above as if fully set forth herein.

60.     As a result of extensive use and promotion of the CHANEL Marks and the goods offered thereunder by Chanel for decades, each of the CHANEL Marks is famous throughout the United States, is highly distinctive of Chanel's goods and is widely recognized among the consuming public as a designation of source of Chanel's goods.  The CHANEL Marks became famous long before Defendants commenced their unauthorized use of the CHANEL Marks as described herein.

61.     The Defendants' commercial use of the CHANEL Marks on and in connection with the sale of jewelry is diluting or is likely to dilute Chanel's famous marks by impairing their distinctiveness, thereby lessening the capacity of the marks to identify and distinguish Chanel exclusively as the source of the products.

62.     Defendants' commercial use of the CHANEL Marks on and in connection with the sale of jewelry also is diluting or is likely to dilute Chanel's famous CHANEL Marks by harming the reputation of the marks, thereby damaging the good reputation of Chanel and the CHANEL Marks.

63.     Upon information and belief, the foregoing acts were done willfully and deliberately, commencing long after the CHANEL Marks became famous, and with an intent to reap the benefit of Chanel's goodwill and dilute the distinctiveness of the CHANEL Marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

64.     Defendants' conduct has caused and is causing immediate and irreparable injury to Chanel and will continue to damage Chanel unless enjoined by this Court.  Chanel has no adequate remedy at law.

FOURTH CLAIM FOR RELIEF
TRADEMARK INFRINGEMENT AND
UNFAIR COMPETITION UNDER NEW YORK COMMON LAW

65.     Chanel repeats and realleges paragraphs 1 through 64 above as if fully set forth herein.

66.     Defendants have used the CHANEL Marks with full knowledge of Chanel's prior rights in the marks and of the fame and success of Chanel's products sold under and bearing the marks.  Defendants' use of the CHANEL Marks is for the willful and calculated purpose of misappropriating and trading on Chanel's goodwill and business reputation.  Furthermore, Defendants have used the CHANEL Marks for the willful and calculated purpose of causing confusion and mistake among the public and of deceiving the public as to the nature and origin of Defendants' products in violation of Chanel's rights under the common law of the state of New York.

67.     Upon information and belief, Defendants were on notice of Chanel's exclusive rights in the CHANEL Marks before using the marks on and in connection with their jewelry products by virtue of Chanel's open sale and use of the CHANEL Marks mark and by virtue of Chanel's federal trademark registrations for the marks.  As a result, Defendants' use of the CHANEL Marks is willful, in bad faith and with full knowledge of Chanel's prior use of, exclusive rights in and ownership of the CHANEL Marks, and with full knowledge of the reputation and goodwill associated with that marks.  By using the CHANEL Marks without authorization, Defendants have been unjustly enriched and Chanel has been damaged.

68.     The aforesaid conduct of Defendants constitutes unfair competition and trademark infringement under the common law of the State of New York.

69.     Defendants' conduct has caused and is causing immediate and irreparable injury to Chanel and will continue to both damage Chanel and to deceive the public unless enjoined by this Court.  Chanel has no adequate remedy at law.

FIFTH CLAIM FOR RELIEF
TRADEMARK DILUTION UNDER NEW YORK LAW (N.Y. General Business Law § 360-*l*)

70.     Chanel repeats and realleges paragraphs 1 through 69 above as if fully set forth herein.

71.     As a result of extensive use and promotion of the CHANEL Marks and the goods offered thereunder by Chanel for decades, each of the CHANEL Marks is famous throughout the United States, is highly distinctive of Chanel's goods and is widely recognized among the consuming public as designations of source of Chanel's goods.  The CHANEL Marks became famous long before Defendants commenced their unauthorized use of the CHANEL Marks as described herein.

72.     Defendants' unauthorized use the CHANEL Marks is diluting and is likely to continue diluting such marks by blurring the distinctiveness thereof, and is likely to injure Chanel's business reputation in that it has removed Chanel's reputation from its own control and that deficiencies in or complaints about Defendants' goods will redound to the harm of Chanel, all in violation of Section 360-*l* of the General Business Law of the State of New York.

73.     Defendants' conduct has caused and is causing immediate and irreparable injury to Chanel and will continue to both damage Chanel and to deceive the public unless enjoined by this Court.  Chanel has no adequate remedy at law.

WHEREFORE, Plaintiff Chanel, Inc. respectfully demands judgment as follows:

1)       That a permanent injunction be issued enjoining Defendants, any entity owned and/or controlled in whole or in part by Defendants, and the partners, officers, agents, privies, shareholders, principals, directors, licensees, attorneys, servants, employees, affiliates, subsidiaries, successors and assigns of the foregoing and all others in active, concert, or participation with any of them from:

(a)     manufacturing, distributing, selling, offering for sale, advertising or promoting, hiding or destroying any products, including but not limited to jewelry, consisting of buttons or other materials bearing any of Plaintiff's trademarks including but not limited to the CHANEL Marks, as well as any materials bearing a colorable imitation or confusingly similar variation of any of the CHANEL Marks;

(b)     using the CHANEL Marks or any simulation, reproduction, copy, colorable imitation or confusingly similar variation of the CHANEL Marks in or as part of a design, logo, or trademark or otherwise using such a mark in connection with the importation, promotion, advertisement, sale, offering for sale, manufacture, production or distribution of any business, product or service;

(c)     processing, packaging or transporting any product bearing the CHANEL Marks, or any mark that is a simulation, reproduction, copy, colorable imitation or confusingly similar variation of the CHANEL Marks;

(d)     selling, offering, distributing, disseminating or otherwise providing any product that bears any of the CHANEL Marks or any mark that is a simulation, reproduction, copy, colorable imitation or confusingly similar variation of any of the CHANEL Marks;

(e)  using any false designation of origin or false description (including, without limitation, any letters or symbols), or performing any act, which can, or is likely to, lead members of the trade or public to believe that Defendants are associated with Plaintiff or that any product imported, manufactured, distributed, or sold by Defendants is in any manner associated or connected with Plaintiff, or is authorized, licensed, sponsored or otherwise approved by Plaintiff;

(f)  engaging in any other activity constituting unfair competition with Plaintiff, constituting an infringement of the CHANEL Marks, or diluting the CHANEL Marks;

(g)  applying to register or registering in the United States Patent and Trademark Office or in any state trademark registry any mark consisting in whole or in part of any of the CHANEL Marks, or consisting in whole or in part of any simulation, reproduction, copy, colorable imitation or confusingly similar variation of any of the CHANEL Marks;

(h)  transferring, consigning, selling, shipping or otherwise moving any goods, packaging or other materials in Defendants' possession, custody or control bearing any of the CHANEL Marks or any mark that is a simulation, reproduction, copy, colorable imitation or confusingly similar variation of any of the CHANEL Marks;

(i)  disposing, destroying, altering, moving, removing, concealing, tampering with or in any manner secreting any business records, including computer records of any kind, including invoices, correspondence, books of accounts, receipts or other documentation relating or referring in any manner to the manufacture, advertising, receiving, acquisition, importation, promotion, display, purchase, sale, offer for sale

or distribution of any merchandise bearing any of the CHANEL Marks or any mark that is a simulation, reproduction, copy, colorable imitation or confusingly similar variation of any of the CHANEL Marks; and

(j)    assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (j) above.

2)  Directing that Defendants deliver up to Plaintiff's attorney for remediation all jewelry products bearing any of the CHANEL Marks, and any goods, labels, tags, signs, stationery, prints, packages, promotional and marketing materials, advertisements and other materials bearing any of the CHANEL Marks (a) currently in their possession or under their control or (b) recalled by Defendants pursuant to any order of the Court.

3)    Directing such other relief as the Court may deem appropriate to prevent the public from deriving the erroneous impression that any product manufactured, sold or otherwise circulated or promoted by Defendants within the United States is authorized by Plaintiff or related in any way to Plaintiff or that Defendants are otherwise affiliated with Plaintiff.

4)    Directing that Defendants file with the Court and serve upon Plaintiff's counsel within thirty (30) days after entry of judgment a report in writing under oath, setting forth in detail the manner and form in which they have complied with the above.

5)    Awarding Plaintiff such damages it has sustained or will sustain by reason of Defendants' acts of trademark infringement, trademark dilution and unfair competition.

6)    Awarding Plaintiff all gains, profits, property and advantages derived by Defendants from their unlawful conduct and, pursuant to 15 U.S.C. § 1117, awarding Plaintiff an amount up to three times the amount of actual damages sustained as a result of Defendants' violation of the Lanham Act.

7)      Awarding to Plaintiff exemplary and punitive damages to deter any further willful infringement as the Court finds appropriate.

8)      Awarding to Plaintiff its costs and disbursements incurred in this action, including reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

9)      Awarding to Plaintiff interest, including pre-judgment interest on the foregoing sums.

10)     Awarding to Plaintiff such other and further relief as the Court may deem just and proper.

Dated:  New York, New York          FROSS ZELNICK LEHRMAN & ZISSU, P.C.
        February 12, 2021

                                    By:_____
                                        Barbara A. Solomon (bsolomon@fzlz.com)
                                        Jessica Vosgerchian (jvosgerchian@fzlz.com)
                                    151 W. 42nd Street, Floor 17
                                    New York, New York  10036
                                    Tel:  (212) 813-5900

                                    *Attorneys for Plaintiff Chanel, Inc.*